(67 App. Div. 393.)

### TURNER v. STATE.

(Supreme Court, Appellate Division, Third Department. December 7, 1901.)

1. FORESTRY—CONDEMNATION OF LAND BY STATE—TIMBER—DAMAGES.

Where timber land is taken by the state for forestry purposes under Laws 1897, c. 220, the damage of one entitled to the timber thereon under a contract with the owner is the value of the timber on the stump, with interest on the same from the time of the appropriation.

2. SAME—COMPUTATION OF STUMPAGE VALUE.

Plaintiff was entitled to the timber on land taken by the state for forestry purposes under Laws 1897, c. 220, and it was shown that plaintiff had offered to sell the stumpage for a certain amount per standard, and there was evidence that he had made another offer to deliver a certain number of standards of logs at a named price. *Held*, in view of plaintiff's offers, that, in determining the value of the stumpage to which plaintiff was entitled as damages, such value should not be computed by finding the value of the timber at the nearest market place, and deducting therefrom the cost of transportation.

8. SAME—COMPUTATION OF DAMAGES.

Where plaintiff was entitled to damages measured by the stumpage value of certain timber on lands taken by the state for forestry purposes under Laws 1897, c. 220, and it appeared that there was a river near the lands, on which such timber from that section 'was usually floated to mills at P., and that the lands were crossed by railroads, but that, in

order to take out the timber by such means, side tracks would have to be built at several places, and it was not shown what the cost would be of transporting the wood from such lands to markets other than those about P., and there was testimony as to the value of said wood at P. and the cost of transporting it there, the value of the stumpage, determined by the market price at the nearest market, less the cost of transportation, must be controlled by the cost of transporting the wood to P.

Appeal from court of claims.

Action by Benton Turner against the state of New York. From a judgment of the court of claims granting plaintiff insufficient relief, he appeals. Reversed.

Argued before PARKER, P. J., and KELLOGG, EDWARDS, SMITH, and CHASE, JJ.

Kellogg & Johnson (Henry T. Kellogg, of counsel), for appellant.

John C. Davies, Atty. Gen. (Merton E. Lewis, of counsel), for the State.

CHASE, J. In May, 1900, the forest preserve board, pursuant to chapter 220 of the Laws of 1897, filed with the secretary of state a description of a certain tract of land containing 7,931.7 acres, lying in township 21, great tract 1, McComb's purchase, Franklin county. The fee of this land was owned by the Adirondack Improvement Company, and the claimant herein had contracts by which he was entitled to all the standing spruce upon such lands over 4 inches in diameter at the stump, and all the standing hemlock upon such lands 8 inches or more in diameter 14 feet above the stump. An agreement was reached with the Adirondack Improvement Company by which the value of the fee of the land so appropriated was adjusted and settled. The damages of the claimant herein were not adjusted, and the same were left for determination by the court of claims. An agreement was reached in regard to the amount of spruce and hemlock belonging to the claimant appropriated by the state. The stipulation is as follows:

"That the entire quantity of spruce on the 7,931.7 acres appropriated by the state on the 10th day of May, 1900, known as the 'Strouse Lands,' was 10,650 cords; that the entire quantity of hemlock upon the same lands was 16,900 twenty-two inch standards; and that the entire quantity of hemlock bark was 4,000 cords."

The only question for determination is the amount of damages which the claimant is entitled to recover by reason of the state having appropriated the timber.

It appears from the contracts in evidence that in 1897 plaintiff purchased the spruce on the premises, giving therefor the sum of $55,000. At the time the state appropriated the land he had already removed therefrom 20,000 cords of spruce, or nearly two-thirds of the amount, leaving the cost of the spruce then remaining about $19,000. In 1898 he purchased the hemlock at 40 cents per standard. It may be assumed, therefore, that the timber appropriated by the state cost the plaintiff, between two and three years prior to the time the state appropriated the same, a sum not exceeding $26,000. Since the claimant purchased the timber, there has been a material increase in the value of spruce and hemlock in the

vicinity of the lands appropriated. The measure of damages where the property is taken in invitum, as in this case, is analogous to that in the case of conversion of property where there is no question of malice or claim to recover exemplary damages. The claimant's damage is the value of the spruce and hemlock owned by him as it was upon the stump, with interest on the amount from the time the same was appropriated. Whele v. Haviland, 69 N. Y. 448. "The money value is the price at which they could be replaced for money in the market, and hence the inquiry is as to the market value of the goods, where they have a market value." Id. If there was a market price at which the timber appropriated could be replaced by the claimant at the place of appropriation, such market price would be the amount of claimant's damage. It is not disputed that there is no place in the vicinity of the lands taken by the state where the claimant could have purchased a similar quantity of spruce and hemlock. Where there is no market value of the property at the place of appropriation, it is necessary to take testimony as to its value at the nearest market place, and deduct therefrom the expense of removing it to such market place. Such testimony is allowed, not because the claimant is entitled to the profits that may arise in connection with the expenditure of money thereon in putting it in such market place, but because of the necessity of such evidence for the purpose of ascertaining the value at the place where appropriated. The court of claims fixed the claimant's damage herein at $46,862.50, and added interest thereon from the time of the appropriation. The record does not disclose how the damage was computed, or what portion thereof was for appropriating the hemlock as distinguished from the spruce. The claimant contends that Plattsburg is the nearest market place, and that he is entitled to recover for the amount of timber as stipulated, without diminution for losses or wastage in any way, at the market price of the same in Plattsburg, less the expense of cutting and transporting the same to such market; and evidence has been received as to the market value of hemlock and spruce at Plattsburg, and the expense of cutting and transporting the same. Evidence was also received in behalf of the state as to the value of the stumpage. One of the witnesses produced by the state says that the claimant, shortly after he obtained the contract for the hemlock, offered to sell to the witness the hemlock stumpage for 40 cents a standard, being the amount that claimant paid therefor. Another witness produced two letters from the claimant, one relating to a sale of hemlock, dated February 12th, by which the firm of which the witness was a member was asked to make an offer on 2,000 standards of hemlock logs delivered in Miller's pond. They responded, making an offer which does not appear; and the claimant then, on the 13th day of February, 1900, less than three months before the time when the state appropriated the timber, wrote a letter of which the following is a copy:

"Gentlemen: In answer to your favor of the 12th, any such offer you have made is declined. If you can see your way clear at $2 for 12-foot logs, and $2.25 for longer logs, I would try and see you, and make a deal with you.
      "Yours,                                      B. Turner"

These offers on the part of claimant justify the conclusion that, so far as the hemlock is concerned, the value of the same should not be fixed by taking the claimed market value of the same at Plattsburg, and deducting therefrom the claimed expense of cutting and transporting the same to such place. The offers by claimant, in connection with the other testimony on the part of the state, also justify the conclusion that Plattsburg is not the nearest market place for the hemlock. The hemlock is chiefly valuable for sawing into boards and other lumber. Much of the spruce owned by the claimant is small, and all of the same is chiefly valuable for pulp wood. The testimony on behalf of the state in regard to the value of the spruce is unsatisfactory. The land taken by the state is mostly surrounded by lakes, and slopes toward such lakes and the Saranac river. The Saranac river is a large river, and the only outlet of said lakes. For many years this river has been used for floating logs and wood from the lands sloping toward such lakes and said river to the mills at and about Plattsburg. Such river is a natural outlet for the transportation of logs used for pulp wood and otherwise. The only means of transporting said timber to the markets referred to by the witnesses for the state is by railroad. Although the lands in question are crossed by railroads, it is claimed that a large portion of the spruce could not be economically loaded upon trains, and, in any event, to transfer the pulp wood by railroad, side tracks would have to be built at several places adjacent to the timber. No statement of the expense of transporting pulp wood from the lands in question to the markets, other than those at and about Plattsburg, has been given; and it may well be that the cost of marketing pulp wood by railroads running to the west and north is such as to practically prohibit such market places from consideration, although they are nearer to the lands in question than Plattsburg. In view of the record as it now stands before us, with the claimant's undisputed testimony in regard to the value of pulp wood at Plattsburg, and the cost of cutting and transporting the same to that point, we feel compelled to find that the conclusion of the court of claims as to the value of the timber appropriated by the state is against the weight of evidence herein. In view of the natural water way from the lands in question, so far as appears by this record, the value of the spruce stumpage must necessarily be largely controlled by the total cost, including therein possible losses, wastage, delays, etc., of putting such timber in the Plattsburg market, and the value of the same at such market. If the testimony taken on this trial in regard to such value and cost, and in regard to Plattsburg being the nearest practical market place for spruce, is erroneous, it should be more effectually controverted on a new trial.

Judgment of the court of claims reversed, with costs, and a new trial granted. All concur, except KELLOGG, J., not voting.